UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VICTOR STEWART,                    ]
                                   ]
        Plaintiff(s),              ]
                                   ]
        v.                         ]        CV-00-CO-01821-S
                                   ]
BE&K, et al.,                      ]
                                   ]
        Defendant(s).              ]

FILED
04 JUL -6 AM 11: 10
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL - 6 2004

MEMORANDUM OF OPINION

I.      INTRODUCTION.

        The plaintiff in this action, Victor Stewart [hereinafter "Stewart"],

claims the defendants discriminated against him because of his age in

violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§§ 621-634, and because of his national origin in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.  The cause is presently

before the court for consideration of defendants' motion for summary

judgment.  [Doc. # 37.]  The motion has been briefed and is ready for

decision.  Upon due consideration, and for the reasons set out below, the

motion will be granted as to all claims against BE&K, Inc., and will be granted as to the age reduction in force claim against BE&K Engineering Company.  The motion will be denied as to the national origin reduction in force and hostile work environment claims against BE&K Engineering Company.

II.    STANDARD.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

III.   FACTS.[1]

Stewart, a 63-year-old, Russian-born, naturalized citizen of the United

States, was hired as an Engineer in the Mechanical Services Department in

the Birmingham office of BE&K Engineering Company on February 27, 1989.

He was terminated as part of a reduction in force on September 8, 1998.

In the early 1990's Stewart was promoted to Senior Design Engineer V

in the Mechanical Services Department under the supervision of John

Nielsen.   Stewart alleges that prior to becoming his supervisor, Nielsen

referred to Stewart as "KGB," "Mafia," and "no good Russian." After Nielsen

became Stewart's supervisor, Stewart overheard him ask another employee

whether "this Russian [was] screwing up [the other employee's] project."

To this, the other employee responded, "Well, he's not talking our

language, but beside that he's a good Russian." Stewart also alleges that

around 1992, other BE&K employees, "tak[ing] after Nielsen," began calling

---

[1]The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

him "Wictor" and mocking his accent. In addition, he alleges that non-supervisory employees frequently made comments such as the following: "no good Russian mother f***er," "you cannot talk," "you don't know the language," "I have no use for you," "Eat s**t and die you dumb mother f***er," "filthy dumb Russian," "here goes [the] neighborhood," and "here goes Rusky."

In arbitration, Stewart testified that Nielsen's comments ceased after Stewart discussed the problem with Ted Kennedy[2] in a 1993 meeting. However, in his deposition, Stewart testified that in 1998, Nielsen once again referred to him as "mafia" and mocked his accent (Plaintiff Depo. p. 92). Stewart also testified that employees other than Nielsen continued to make frequent derogatory comments to him such as: "You don't belong in the South," "you need to go back to where you belong," "I can't understand this Russian," "dumb Russian," "there goes the neighborhood," "I can understand everyone except that dumb Russian," "you f***ing Russian," and "now say it in English." Stewart stated that "members of leadership" were present when these comments were made, but he did not report them

---

[2]Kennedy was the President of BE&K, Inc.

officially to human resources.

## IV.   DISCUSSION.

### A.   BE&K, Inc., Is Not A Proper Party.

It is undisputed that Stewart was employed by BE&K Engineering Company, but he also claims he was an employee of BE&K, Inc., the parent company of BE&K Engineering. Stewart has the burden of establishing the existence of an employment relationship between himself and BE&K, Inc; his failure of proof mandates summary judgment. *See Celotex*, 477 U.S. at 322-323 ("[t]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")   Conversely, BE&K, Inc., is not required to support its motion for summary judgment with evidence tending to negate an employment relationship. *See id.* at 323.[3]

---

[3]Although there are legal theories that can be used in order to establish jurisdiction over a parent company, such as the "single employer" theory, *see McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987), Stewart has failed to assert such a theory and has not discussed any of the factors involved, such as (1) interrelation of operations, (2) centralized control of labor relations, (3) common

Stewart contends he should be considered an employee of BE&K, Inc.,

because he was covered by the ESP[4] and he took his harassment complaints

to Ted Kennedy, the President of BE&K, Inc., in 1993.[5] Coverage by the ESP

does not shed light on this issue, since the ESP clearly indicates that it

covers both employees of BE&K, Inc., and BE&K Engineering Company. (Def.

Ex. A, 1). Further, Stewart's unilateral decision to take his complaints to the

President of BE&K, Inc., rather than to the management of BE&K

Engineering does not support Stewart's claim that he was an employee of

BE&K, Inc.

Because there is no evidence that BE&K, Inc., had an employment

relationship with Stewart, summary judgment will be granted to BE&K, Inc.,

in all respects.

---

management, and (4) common ownership or financial control. *Id.*

[4]BE&K established its Employee Solution Program ("ESP") in 1996 to assist employees in addressing workplace problems and disputes. The ESP applied to the employees of BE&K, Inc., and the employees of BE&K Engineering Company.

[5]Stewart met with Kennedy for around 30 minutes.  He showed Kennedy his performance reviews, which generally indicated he was hardworking and technically competent but had problems with communication skills and teamwork, and told Kennedy about the comments Nielsen and other employees made.  After the meeting, Nielsen told Stewart that he should have gone to Ray Williamson, the President of BE&K Engineering, before going to Kennedy.

B.    The Reduction In Force.

During the time period leading up to Stewart's termination, the

number of personnel in the Mechanical Services Department had been

reduced from approximately 155 to 68 employees.  Of the four Senior Design

Engineer Vs in the Mechanical Services Department, Stewart and Desai were

selected for RIF and Meyers and Lowery were retained.  Stewart alleges that

he was subjected to discrimination on the basis of age and/or national origin

in that he was terminated while younger employees of non-Russian origin

were retained.

Under the *McDonnell-Douglas* analysis,[6] the plaintiff creates a

rebuttable presumption of discrimination by proving a *prima facie* case of

discrimination, which, in the case of a reduction in force, consists of proof

that: (1) he is a member of a protected class and was adversely affected by

an employment decision; (2) he was qualified for his current position or to

---

[6]"Whether an employer intentionally discriminated against an employee. . .is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citation omitted). Stewart has not presented any direct evidence; therefore, he must prove his case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (*McDonnell-Douglas* analysis also applies to ADEA claims).

assume another position at the time of discharge; and (3) there is evidence by which a fact-finder could reasonably conclude that the employer intended to discriminate on the basis of age and/or national origin in reaching its decision. *See, e.g., Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342 (11th Cir. 2003); *Mitchell v. USBI Co.,* 186 F.3d 1352, 1354 (11th Cir. 1999); *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1329 (11th Cir. 1998); *Jameson v. Arrow Company,* 75 F.3d 1528, 1532 (11th Cir. 1996). BE&K argues Stewart cannot present evidence from which a reasonable jury could conclude that BE&K intended to discriminate on the basis of Stewart's age or national origin when Nielsen discharged him.

The burden of establishing a prima facie case of disparate treatment is not onerous. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). Stewart presented evidence that he was terminated, while others who were younger and of non-Russian origin were retained. The Eleventh Circuit has not specifically stated whether such evidence would be sufficient to establish the third element of a prima-facie reduction in force

claim.[7]    However,  in  *Wright  v.  Southland  Corp.*,  the  court  provided

examples  of  evidence  that  would  sufficiently  establish  the  *McDonnell-*

*Douglas* rebuttable presumption of discrimination:

> If a plaintiff chooses to make use of the *McDonnell Douglas* presumption, he initially does not need to present evidence from which the trier of fact could conclude that the adverse employment action taken against him was *caused by* improper discrimination. Instead, he need only establish that (1) an adverse employment action was taken against him, (2) he was qualified for the job position in question, and (3) different treatment was given to someone who differs in regard to the relevant characteristic. For instance, if a plaintiff alleges that he was passed over for a job promotion because of his race, then under *McDonnell Douglas* he must establish that (1) he was in fact passed over for the promotion, (2) he was qualified for the higher position, and (3) an individual of a different race was given the higher position. If a plaintiff

---

[7]The Eleventh Circuit has discussed the sufficiency of *alleged statements* as evidence of discriminatory intent in the RIF context. *See, e.g., Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318 (11th Cir. 1998) (holding that where the only evidence of discriminatory intent was the alleged statement of a member of management that 'older people have more go wrong,' the third element of a prima facie case was not satisfied); *Mauther v. Hardy Corp.*, 825 F.2d 1554 (11th Cir. 1987) (holding that the statement of a vice-president, with no connection to the plaintiff's termination, that company was planning 'to weed out the old ones' did not suffice to show discriminatory intent).  In other cases, such as *Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir. 1996), the court addressed whether failure of an employer to transfer or rehire a RIF-terminated employee constituted evidence of discriminatory animus. *See also Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342 (11th Cir. 2003). Athough Stewart  met with the Manager of Engineering in 1996 to discuss the possibility of transferring to BE&K's Delaware office, he has not presented any evidence that the failure to transfer him was due to his age or national origin.

> alleges that she was fired because of her sex, then under
> *McDonnell Douglas* she must establish that (1) she was in
> fact fired, (2) she was qualified for her position, and (3)
> she was replaced by a male (*or that males with similar
> qualifications were retained*).

187 F.3d 1287 (11th Cir. 1999)(citations omitted; emphasis added). The

court went on to note that, with regard to age discrimination cases under

ADEA, once the plaintiff establishes that he is over 40 years of age, "he

need only prove that he was replaced by someone younger, regardless of

whether the replacement is over 40." *Id.* at 1291 n.3. Stewart has shown

that he was terminated while younger employees of non-Russian origin were

retained, and that the employees selected for RIF were generally over 40.

In light of this evidence, and the fact that the *prima facie* burden is not an

onerous one, Stewart has established a prima facie case of age and national-

origin discrimination.

However, a defendant can rebut the presumption of discrimination by

producing evidence of a legitimate, non-discriminatory reason for the

challenged employment action. *McDonnell-Douglas,* 411 U.S. at 802; *Damon

v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1359 (11th Cir. 1999).

BE&K claims that it selected Stewart for termination in the RIF because: 1)

unlike others who were retained, Stewart lacked the potential to engage in reimbursable work; 2) unlike the other employees in his position, Stewart was not a registered Professional Engineer, a qualification required by many of BE&K's clients; 3) unlike Myers, who was retained, Stewart's stress analysis skills were not up to date; 4) unlike Lowery, who was retained, Stewart was not an HVAC Engineer; and 5) Stewart's performance as a design leader was sub-par because of his weaknesses in communication and teamwork.[8]

Once the presumption is rebutted, the employer is entitled to summary judgment unless the plaintiff proffers evidence from which a reasonable fact-finder could conclude that the reason articulated by the defendant is mere pretext for age and/or national origin discrimination. *See, e.g., McDonnell-Douglas*, 411 U.S. at 804.  Since BE&K has offered legitimate, non-discriminatory reasons for Stewart's termination, Stewart is left with the ultimate burden of producing evidence from which a reasonable fact-finder could conclude that BE&K's proffered reasons were

---

[8] These problems had been addressed repeatedly in Stewart's annual performance evaluations.

mere pretext for discrimination. *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989). A plaintiff may prove pretext "(1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Standard*, 161 F.3d at 1332.

If he chooses to take the first approach, Stewart has the burden of proving that all of BE&K's articulated reasons are pretextual. *Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)("If the plaintiff does not proffer sufficient evidence to create genuine issue of material fact regarding whether *each* of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.")(emphasis added). Stewart has failed to establish that all of BE&K's proffered reasons are unworthy of credence. Stewart does not dispute any of the following: 1) that of the four Senior Design Engineer Vs, he was the only one who was not a registered Professional Engineer; 2) that his stress analysis skills were not as up to date as Myers'; and 3) that he was not an

"HVAC person" like Lowery.[9]   Therefore, he must prove pretext by showing that, in light of all the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons.

Plaintiff asserts that pretext is proven by his testimony that all individuals laid off by BE&K were in the protected classification. As discussed *supra*, this evidence, given the non-onerous nature of the *prima facie* burden, is sufficient to shift the burden to the defendants and require them to articulate a legitimate, non-discriminatory reason for Stewart's termination. However, without more, Plaintiff's evidence is an insufficient basis for a reasonable fact-finder to conclude that BE&K more likely terminated Stewart for discriminatory reasons rather than the proffered reasons; additional evidence of discrimination is needed.   "Conclusory allegations of discrimination, without more, are not sufficient to raise an

---

[9]In his response to summary judgment, Stewart disputes that he was assigned to non-reimbursable general office work for the last 10 months of his employment, but does not point to any evidence providing a factual basis for this dispute, as required by the court's initial order. Likewise, Stewart disputed that his performance as a design leader was sub-par due to his weaknesses in communication and teamwork without pointing to evidence supporting his position.   Even if Stewart's position were supported in the evidence, he has not presented sufficient evidence to allow a fact-finder to disbelieve *each* of the employer's proffered explanations for its actions. Since Stewart has failed to present any evidence proving that three of the five proffered reasons are unworthy of credence, any dispute over the other two proffered reasons is immaterial.

inference of pretext." *Elrod v. Sears, Roebuck, and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991). Although the Supreme Court has held that the *prima facie* case, combined with sufficient evidence of pretext, may permit a finding of unlawful discrimination, even without additional, independent evidence of discrimination, *see Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 153-154 (2000), this holding applies only in situations where the plaintiff presented sufficient evidence to reject the employer's articulated reasons. *Id.* In this case, Stewart has provided no evidence to suggest that BE&K's articulated reasons are unworthy of credence. *See also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987) ("a plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant.").

Stewart has not presented any additional evidence of age discrimination. Furthermore, when the decisionmaker is over the age of forty, courts have been less likely to find age discrimination. *See, e.g., Elrod v. Sears, Roebuck, & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (stating that the plaintiff "faces a difficult burden . . . because all of the primary players behind his termination . . . were well over the age of forty and

within the class of persons protected by the ADEA."). Since Nielsen was also over the age of forty when Stewart was terminated, Stewart may have a heavier burden of establishing pretext. In sum, it is the opinion of this court that Stewart has failed to establish pretext with regard to age discrimination.

However, Stewart has presented sufficient evidence from which a reasonable fact-finder could conclude that national origin discrimination, rather than the proffered reasons, more likely motivated BE&K to apply the reduction in force to him. Although Stewart has failed to dispute any of BE&K's articulated reasons, he has presented evidence of a "barrage of comments" related to his national origin which tends to show "that, in light of all the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." *Standard*, 161 F.3d at 1332.

Evidence of slurs or "stray remarks" are sufficient for a determination of pretext only *when coupled with other circumstantial evidence of discrimination* or insincerity of the articulated reason. *See La Fleur v. Wallace State Community College*, 955 F. Supp. 1406, 1419 (M.D. Ala. 1996); *Shager v. Upjohn Co.*, 913 F.2d 398, 402-403 (7th Cir. 1990). Here, there is

other circumstantial evidence of discrimination. *See Jones v. Bessemer Carraway*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998)(per curiam)(stating that "language not amounting to direct evidence, but showing some racial animus, may be significant evidence of pretext . . .").

The Eleventh Circuit has held that "comments by non-decisionmakers do not raise an inference of discrimination . . . ." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999); *see also Steger v. General Electric Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1329-30 (11th Cir. 1998); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987). In addition, statements made by decisionmakers which are unrelated to the decision process at issue will not satisfy the plaintiff's burden of establishing pretext." *Steger*, 318 F.3d at 1079. Thus, it is clear that neither the alleged offensive statements of co-workers nor offensive statements made by Nielsen outside of the context of Stewart's termination would, *standing alone*, satisfy Stewart's burden of establishing pretext.

However, the evidence, when considered in totality and in the light most favorable to Stewart, shows a plausible nexus between the offensive

remarks, the decisionmaker (Nielsen), and Stewart's termination, which does satisfy Stewart's burden of establishing pretext. Taken in the light most favorable to Stewart, there is evidence that prior to 1993, Nielsen referred to Stewart as "KGB," "Mafia," and "no good Russian." In addition, Stewart later overheard Nielsen ask another employee, "Is this Russian screwing up you[r] project . . .?" These comments, standing alone, are too remote in time to constitute sufficient proof that national origin more likely than not motivated Neilsen's selection of Stewart for the RIF. *See Burrell v. Board of Trustees*, 125 F.3d 1390, 1394 (11th Cir. 1997); *Anderson v. Twichell-A Tyco Int'l Ltd.*, 76 F. Supp. 2d 1279, 1285 (M.D. Ala. 1999). However, there is also some evidence that, in 1998, Neilsen referred to Stewart as "mafia" and mocked his accent.[10] In addition, Stewart testified that the other employees began "tak[ing] after Nielsen" by making their own offensive comments, which then "spread throughout the department." Stewart Dep. at 126. Stewart testified that these comments, initiated by

---

[10]The Court has previously observed the plaintiff's testimony has been inconsistent in this regard.  However, the inconsistency must be resolved by the fact-finder and for this summary judgment proceeding, the court views the evidence in the light most favorable to the plaintiff.

Nielsen's comments, lasted throughout Stewart's employment with BE&K. At least one of the comments was related to Stewart's termination, since Stewart testified that Dennis Myers referred to him as "a filthy dumb Russian," and said "when they ask me I'll be the first one to tell them to fire your ass, you dumb Russian." The latter statement allegedly took place during a meeting in 1997.   In sum, this evidence, when considered in totality and in the light most favorable to Stewart, creates a nexus between the offensive remarks, the decisionmaker, and Stewart's termination. The existence of this nexus casts a shadow on the sincerity of BE&K's articulated reasons. This creates a material factual dispute as to whether discriminatory reasons more likely motivated the decision than the proffered reasons.

Accordingly, BE&K's motion for summary judgment will be denied as to the claim that Stewart was terminated due to his national origin and granted as to the claim that Stewart was terminated due to his age.

C.    Hostile Work Environment.

Stewart claims he was subjected to a hostile work environment because of his Russian national origin while he was employed at BE&K. BE&K contends that Stewart's hostile environment claim is untimely because

he cannot show the occurrence of a hostile act within the 180 day filing period.[11] BE&K also argues that it is not responsible for Stewart's work environment under either a theory of vicarious or of direct liability.[12]

### 1.    Timeliness.

Title VII requires that a complaint be filed with the EEOC within 180 days (300 days under certain circumstances) after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). In *National Railroad v. Morgan*, the Supreme Court explained that only those discrete acts (such as termination, failure to promote, or denial of transfer) that occurred

---

[11] BE&K also argues that Stewart is barred under the doctrine of laches from relying on acts outside of the filing period because he failed to report any alleged discrimination after 1993.   The laches defense requires proof of prejudice to the defendant. *See, e.g., Kansas v. Colorado*, 514 U.S. 673, 687 (1995). Since BE&K has not shown it suffered any prejudice, this court will not consider the laches defense.

[12] A plaintiff wishing to establish a hostile work environment claim must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002). BE&K has challenged only the fifth element of the prima facie case in its summary judgment motion. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (stating that "the onus is upon the parties to formulate arguments."); *see also Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) (stating that "[w]hen a party moves for summary judgment on ground A, his opponent is not required to respond on ground B – a ground the movant might have presented but did not.")

within the applicable filing period are actionable under Title VII; all prior discrete discriminatory acts are untimely filed and are no longer actionable. 536 U.S. 101, 114-115 (2002). However, the Court distinguished claims for discrete acts from hostile work environment claims. *See id.* at 115. Because hostile work environment claims by "[t]heir very nature involve repeated conduct . . . [t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . .   Such claims are based on the cumulative effect of individual acts." *Id.*  The Court concluded that "[i]t does not matter, for the purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.  Therefore, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 118.

Stewart filed his complaint with the EEOC on January 13, 1999. Therefore, in order to meet Title VII's filing requirements, a single component act of the allegedly hostile work environment must have occurred on July 17, 1998, or later. For purposes of summary judgment, of course, the question is whether there is a genuine issue of material fact as to whether such a component act occurred within the filing period.

From July 12, 1998, until August 30, 1998, Stewart was on loan to BE&K's Mobile office. He returned to the Birmingham office on or about Monday, August 30, 1998. After taking some vacation time, Mr. Stewart worked at the Birmingham office for 3 or 4 more days until his termination on September 8, 1998. To meet the Title VII requirements, a component act must have occurred to Mr. Stewart while he worked at the Mobile office or during the 3 or 4 days in the Birmingham office immediately prior to his termination.

There is a dispute over whether Stewart provided competent evidence that discriminatory comments occurred during his tenure in Mobile. At one point in his deposition, Stewart testified that he did not remember anyone in the Mobile office saying anything to him that he thought was

discriminatory against his age or national origin.

Later in his deposition, Mr. Stewart was asked about this previous testimony:

> Q: What did Mr. Cardolas say to you?
> A: Wictor, Wictor, on occasion dumb Russian.
> Q: Do you recall the first time he said Wictor, Wictor or dumb Russian to you?
> A: That's late '90s.
> Q: Before or after–
> A: '80s, I guess.
> Q: '90s?
> A: '90s.
> Q: Was that before or after you went to Mobile?
> A: It was before, and he was in Mobile. He was in the construction site office, so we had few occasions he called me in Mobile.
> Q: I believe in your earlier testimony you said nobody made any comments to you in Mobile. Is that incorrect?
> A: When we talk about that, we talk about like mother-f***er and all that. He never said mother-f***er to me.
> Q: Okay. And was that the last time he ever said anything to you, was in the late 1990s, maybe in '98?
> A: '98 when I worked in Mobile, would have been that time in Mobile.

Stewart Dep., Doc. 38, Vol. 1, pp. 174-75. Citing *McCormick v. City of Fort Lauderdale*, 333 F.3d at 1240 n.7, the defendants argue that plaintiff cannot create an issue of fact and make his claim timely by contradicting earlier sworn testimony without explanation. The situation in *McCormick* is

distinguishable. There, the defendant submitted an affidavit in summary judgment proceedings contradicting some of the material facts in a sworn statement given to police three days after the events in question. The *McCormick* court stated:

> Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, *without explanation,* previously given clear testimony." *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984)(emphasis added). Such an affidavit would be a sham.

*McCormick,* 333 F.3d at 1240.  In this case, Stewart offered an explanation of his testimony *later in the same deposition,* not in an affidavit submitted solely for the purposes of opposing a motion for summary judgment. Thus, whether or not comments occurred in Mobile is a legitimate issue of fact.

Because there is some evidence that Stewart was subjected to hostile comments in Mobile, BE&K is not entitled to summary judgment as to the timeliness question regardless of Stewart's success in proving he was

subjected to comments during his last days in Birmingham.  Nevertheless,

the court has examined the evidence and has considered BE&K's argument

that "Plaintiff's 'general allegations' about comments he 'thinks' may have

been made to him upon his return from Mobile" are insufficient to create a

material issue as to whether a component act occurred during the statutory

filing period.  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592

(11th Cir. 1995).[13]  While he testified that he "stopped paying attention"

and could not always relate specific comments to specific speakers, Stewart

conclusively testified that Myers, Putnam, Henderson and Carter continued

to heckle him after he returned to Birmingham.  He specifically stated that

they variously mocked his accent, called him "Wictor," stated that Alabama

---

[13] In *Resolution Trust*, the court stated that "mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists." *Id.* at 592 (Internal quotation marks omitted). The *Resolution Trust* court cited the Fifth Circuit for this proposition; the statement must be traced back to *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013, 1015, (5th Cir. 1967), for any explanation regarding what constitutes "mere general allegations." In that case, the Fifth Circuit noted that:

> The deposition relied upon by Liberty to show that the summary judgment should not have been granted, contains no statements that in any way approach the required specificity. No names, dates or locations are given, and the general assertions and legal conclusions which characterize the entire deposition do not give rise to a genuine issue of material fact.

*Id.*

had no border patrol, and said "there goes the neighborhood." Stewart specifically recalled names, dates and location for one or more comments made during his last days in Birmingham and, therefore, his testimony does not lack the specificity required to give rise to a genuine issue of fact.

In summary, there is sufficient, competent evidence presented in this summary judgment proceeding to create a factual question regarding whether Stewart was subjected to hostile comments during his tenure in Mobile and his last 3 or 4 days in the Birmingham office and whether he filed his EEOC complaint within 180 days after the last hostile comment.

    D.    Basis For Holding BE&K Liable.

Finally, BE&K argues there is no basis for holding it liable under either a theory of vicarious or of direct liability. There is no claim or evidence that BE&K is liable on a direct theory.

In *Miller v. Kenworth of Dothan*, the Eleventh Circuit summarized the element of vicarious liability for a hostile environment created by a supervisor:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority

> over the employee. The employer will be strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim. However, when an employee has established a claim for vicarious liability but where no tangible employment action was taken, a defending employer may raise as an affirmative defense to liability or damages: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

277 F.3d 1269, 1278 (internal quotation marks and citations omitted).  BE&K points to evidence of its ESP program, arguing that Stewart never took advantage of the avenues available to him to voice a complaint.

However, the affirmative defense does not apply in this case, since Nielsen clearly took a tangible employment action against Stewart by terminating him. The Supreme Court has made it clear that the *Faragher/Ellerth* affirmative defense is not available "when the supervisor's harassment culminates in tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762-763 (1998).

Moreover, there remain material factual questions as to 1) whether

BE&K exercised reasonable care to prevent and correct any harassing behavior directed toward Stewart, and 2) whether Stewart unreasonably failed to take advantage of preventative or corrective opportunities. Failure of the employee to use any complaint procedure provided by the employer "will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998). However, the mere existence of an anti-harassment policy or procedure, coupled with the showing that the plaintiff failed to utilize that procedure, is not enough to satisfy the second element; indeed, "where there is an ineffective or incomplete policy, the employer remains liable for conduct that is so severe and pervasive as to confer constructive knowledge" of harassment. *Farley v. Am. Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir. 1997). Only "when an employer has 'promulgated an effective and comprehensive' anti-harassment policy that is 'aggressively and thoroughly disseminated' to its employees, [does] an employee's failure to utilize the policy's grievance procedure . . . prevent constructive knowledge of such harassment from adhering to the employer." *Miller*, 277 F.3d at 1279 (quoting *Farley*, 115 F.3d at 1554). Significantly, BE&K argues

that Stewart's 1993 meeting with Kennedy, which took place prior to when

the ESP was established, proves that Stewart "was able to use the policy to

effectively obtain relief for the only alleged harassment that he reported to

anyone in management." (Movant's Reply Submission at 27). This argument

would seem to undermine BE&K's ability to establish the second element of

the affirmative defense, since there is a material factual question as to

whether Stewart did actually obtain relief from Nielsen's comments after

the meeting.    In short, whether BE&K's ESP is an "effective and

comprehensive" policy or procedure is a material factual question.

Vicarious liability can also stem from a hostile environment created

by co-workers:

> Where the perpetrator of the harassment is merely a co-
> employee of the victim, the employer will be held directly liable
> if it knew or should have known of the harassing conduct but
> failed to take prompt remedial action. Thus, a victim of
> coworker harassment must show either actual knowledge on the
> part of the employer or conduct sufficiently severe and
> pervasive as to constitute constructive knowledge to the
> employer.

277 F.3d 1269, 1278 (internal quotation marks and citations omitted). The

court further explained that:

Actual notice is established by proof that management knew of the harassment, whereas constructive notice will be found where the harassment was so severe and pervasive that management should have known of it. *Id.* In addition, the Eleventh Circuit has "held the following factors to be germane to the issue of constructive notice of harassment: (1) the remoteness of the location of the harassment as compared to the location of the management; (2) whether the harassment occurs intermittently over a long period of time; (3) whether the victims were employed on a part-time or full-time basis; and (4) whether there were only a few, discrete instances of harassment.

*Id.* (internal quotation marks omitted). Stewart argues his complaint to Kennedy at the 1993 meeting constitutes actual knowledge of harassment. While the meeting's focus was the alleged comments made by Nielsen, Stewart also told Kennedy that other employees were following Nielsen's lead by making similar remarks. Although Stewart did not mention any specific comments made by co-workers, it is possible that this meeting constituted actual knowledge of co-worker harassment.[14]

However, it is unnecessary for this court to conclusively determine whether BE&K had actual knowledge of harassment by co-workers, since the

---

[14] It is possible that Kennedy's knowledge is not even relevant, since he was the President of BE&K, Inc., not BE&K Engineering Company. However, since the defendant does not advance such an argument, this court will not discuss this issue.

Defendant has not met its burden of showing that there is no genuine issue of material fact with respect to potential constructive notice. The plaintiff testified that the harassment suffered by Stewart: (1) sometimes occurred in the presence of "members of leadership," (2) occurred over a long period of time, and (3) occurred on many occasions (in other words, instances of harassment were not "few" or "discrete"). Considering the relevant factors of constructive notice, this court finds that the evidence viewed in the light most favorable to Stewart, is sufficient to create a jury question on this issue.

## V.    CONCLUSION.

In sum, the motion for summary judgment will be granted in all respects with regard to Defendant BE&K, Inc. The motion for summary judgment, with respect to Defendant BE&K Engineering Company, will be denied for Plaintiff's national origin reduction in force and hostile work environment claims, and granted for Plaintiff's age reduction in force claim.

Done this _6_ day of July 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE